**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| TROY R. NORRED, M.D.,<br><br>    Plaintiff,<br><br>vs.<br><br>MEDTRONIC, INC., MEDTRONIC VASCULAR, INC., & MEDTRONIC COREVALVE, LLC,<br><br>    Defendants. | Civil Action No. 2:13-cv-2061 EFM/DJW<br><br><br>JURY TRIAL |

**MEMORANDUM IN SUPPORT OF MEDTRONIC'S MOTION TO STAY PROCEEDINGS PENDING *INTER PARTES* REVIEW OF U.S. PATENT NO. 6,482,228**

Defendants Medtronic, Inc., Medtronic Vascular, Inc., and Medtronic CoreValve, LLC (collectively, Medtronic) move the Court for an order staying this action pending the conclusion of the *inter partes* review of U.S. Patent No. 6,482,228 (the '228 patent), because a stay will simplify or eliminate issues before the Court, reduce the burden of litigation on the parties, conserve judicial resources, and it will not unduly prejudice the parties.

**I. NATURE OF THE MATTER BEFORE THE COURT**

The Plaintiff, Dr. Troy Norred, has filed a patent infringement case against Medtronic alleging that Medtronic's CoreValve artificial heart valves infringe a patent owned by Dr. Norred. After being served with this lawsuit, Medtronic identified a large number of prior art references that were never considered by the Patent Office in reviewing Dr. Norred's patent. Medtronic made that prior art the basis of two Inter-Parties Review petitions before the Patent Trial and Appeal Board ("PTAB") under a procedure recently enacted by Congress for challenging the validity of patents asserted in litigation. Based on data since the inception of

1

inter-parties review over a year ago, the likelihood of the inter-parties review being granted, and a review proceeding initiated, is approximately 90%.

In this motion, Medtronic respectfully requests that this Court exercise its discretion to stay this case pending the a ruling by the United States Patent and Trademark Office ("USPTO") as to whether it will open an inter-parties review under Medtronic's two petitions filed October 31, 2013. If the petitions for inter parties review are accepted, then the PTAB will hold a trial to adjudicate the validity of Dr. Norred's patent. Together, Medtronic's petitions challenge the validity ***all of the asserted claims of the '228 patent*** at issue in this litigation. Statistically, it is likely that the USPTO will take a closer look at the '228 patent. From September 2012 through July 2013, 126 out of the 141 (89%) petitions for *inter partes* review resulted in an instituted trial.[1] Once the *inter partes* review is initiated, the USPTO will reach a final determination regarding the validity of the '228 patent within one year.

There are significant benefits – ***regardless of the result*** – to staying this case pending the results of the inter-parties review. *First*, if the asserted claims are invalidated, this case will likely be dismissed. *Second*, if the asserted claims are amended, this case will re-open and proceed according to the amended claims, rather than the claims that were cancelled during the review. *Third*, a stay will avoid the need for multiple claim construction hearings. Because arguments made by Dr. Norred during the *inter partes* review characterizing claims terms and prior will impact the scope of the asserted claims, these arguments must be taken into account in the Court's claim construction ruling. Without a stay, the claim construction hearing currently scheduled for May 2014 would be rendered superfluous if Dr. Norred subsequently presents arguments to the patent office affecting the scope of the claims.

---

[1] *See* http://www.uspto.gov/ip/boards/bpai/stats/aia_trial_proceedings.pdf

The Patent Office will issue its initial ruling on whether or not to conduct an inter-parties review within the next 6 months (possibly sooner if Dr. Norred chooses not to file a patent owner's statement). Medtronic suggests that the Court stay this case pending the outcome of the initial ruling, and if the initial ruling of the Patent Office is to open an inter-parties review proceeding (a 90% likelihood), then the Court should continue the stay. The advantage to the Court and the Parties of staying the case now, as opposed to waiting until late April 2014 for the initial ruling from the Patent Office, is that by April 2014 the Parties will have already designated claim terms for construction, exchanged proposed claim constructions, and written and filed their claim construction briefs. That work will completely mooted if the Patent Office grants the inter-parties review and, upon trial, invalidates the asserted claims. Even if the claims are ultimately allowed, amendments to the claims or arguments to overcome prior art can constitute subject matter disclaimers that need to be taken into consideration by the Court during claim construction. *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1365 (Fed. Cir. 2012) (en banc) ("To be sure, patent applicants' actions and arguments during prosecution, including prosecution in a reexamination proceeding, can affect the proper interpretation and effective scope of their claims.").

The decision to stay this case falls within the sound ***discretion*** of the trial court. *See, e.g., ScriptPro LLC v. Wal-Mart Stores, Inc.*, Civ. A. No. 05-2244-CM, 2006 U.S. Dist. LEXIS 55456, at *2 (D. Kan. Aug. 8, 2006) (emphasis added). For example, the Court may exercise this discretion to (1) implement the stay immediately; (2) implement the stay once the USPTO has instituted the *inter partes* review; or (3) deny the stay entirely. Given the substantive effect the *inter parties* review will have on the '228 patent – ***regardless of the result*** – this litigation will

3

be in a fundamentally different place following the conclusion of USPTO proceedings. Medtronic therefore respectfully submits that interests of efficiency favor staying this case now.

## II.   STATEMENT OF FACTS

### A.   Background

This case relates to the Medtronic CoveValve Transcatheter Aortic Valve ("the CoveValve device"), which offers a minimally invasive treatment option for patients with severe aortic stenosis at a high or prohibitive risk for surgery. A group of doctors and engineers at CoreValve, Inc. conceived of and began developing the CoreValve device in 2001. Medtronic acquired CoreValve, Inc. in 2009 and in the intervening years has invested considerable resources developing the CoreValve device. Medtronic is currently conducting clinical trials of the CoreValve device in an effort to commercialize this important medical advance.

On February 6, 2013, Dr. Norred sued Medtronic for patent infringement. (Dkt. No. 1, Compl.)[2] Dr. Norred alleges that he began developing his aortic valve and percutaneous placement technique in 1999 and sought to patent it in May 2000. (Compl. ¶¶ 20, 27.) As a result, the '228 patent issued in 2002, naming Dr. Norred as the inventor. (Dkt. No. 1-1, Compl. Ex. A, at 1.) Norred alleges that Medtronic's activities in relation to the CoreValve device infringe the '228. (Compl. ¶¶ 49, 58.) As required under the Court's Scheduling Order, Norred notified Medtronic on September 20, 2013, that he is asserting only claims 16 and 20 of the '228 patent in this action.

This litigation is in its infancy. On March 28, 2013, Medtronic answered the Complaint and asserted counterclaims of noninfringement and invalidity of the '228 patent. Plaintiff's

---

[2] Plaintiff's Complaint also named as defendants CoreValve, Inc., which no longer has corporate existence, having been extinguished by virtue of a merger, and Rob Michiels and Daniel Lemaitre, individuals who have been dismissed by stipulated order.

Motion to Dismiss the counterclaims, filed on May 20, remains pending before the Court. Although the parties have exchanged initial disclosures under Fed. R. Civ. P. 26, document discovery has only just begun. No depositions have been taken, no interrogatories have been served, nor have any expert reports been exchanged. Indeed, per the Court's Scheduling Order, the parties need not even disclose their experts until August 2014. The Scheduling Order further sets a discovery deadline of October 1, 2014; a pretrial conference date of October 14, 2014; and a dispositive motion deadline of October 31, 2014—all about a year from now. No trial date has been set.

### B. *Inter Partes* Review of the '228 Patent

Since the filing of this action, Medtronic has conducted a prior art search and identified a large number of prior art references that were not considered by the Patent Office in examining Dr. Norred's application. On October 31, 2013, Medtronic filed two petitions for *inter partes* review based on four references anticipating claims 16-20 and six references anticipating claims 20-24 of the '228 patent.

Medtronic's petitions for *inter partes* review are strong. For example, one petition identifies, *inter alia*, U.S. Patent No. 3,548,427 (the Kischer reference), which issued **over 30 years** before the '228 patent. As shown below, the Kischer reference discloses every limitation of claim 16 of the '228 patent and contains substantively identical figures to those representing the embodiments described in claim 16.



Similarly, the second petition identifies multiple references that disclose every limitation of claim 20 of the '228 patent and contain substantively identical figures to those representing the embodiments described in claim 20.



Medtronic anticipates that the USPTO will grant both petitions for *inter partes* review and invalidate all the challenged claims, including both claims that Plaintiff asserts in this action.

## III.   ARGUMENT AND AUTHORITIES

### A.   Courts Apply a Liberal Policy of Granting a Stay Pending PTO Review.

A district court has "inherent power to manage [its] dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988).  "A motion to stay pending reexamination by the PTO is within the sound discretion of the court." *ScriptPro LLC v. Wal-Mart Stores, Inc.*, Civ. A. No. 05-2244-CM, 2006 U.S. Dist. LEXIS 55456, at *2 (D. Kan. Aug. 8, 2006).

"There is a liberal policy in favor of granting motions to stay proceedings pending the outcome of the PTO's reexamination or reissuance proceedings."  *Id*. (brackets and internal quotation marks omitted).  This Court has recognized the myriad advantages of staying litigation pending PTO review of a patent:

> 1.  All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
>
> 2.  Many discovery problems relating to prior art can be alleviated by the PTO examination.
>
> 3.  In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
>
> 4.  The outcome of the reexamination may encourage a settlement without the further use of the Court.
>
> 5.  The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
>
> 6.  Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.
>
> 7.  The cost will likely be reduced both for the parties and the Court.

*Braintree Labs., Inc. v. Nephro-Tech, Inc.*, No. 96-2459-JWL, 1997 U.S. Dist. LEXIS 2372, at *27-28 (D. Kan. Feb. 26, 1997); *see also ScriptPro LLC*, 2006 U.S. Dist. LEXIS 55456, at *2-3

(recognizing that purposes of reexamination include "to eliminate trial of the validity issue or facilitate trial of the issue by providing the court with the expert view of the PTO," and "to allow the validity of the patent to be tested in an efficient and relatively inexpensive manner" (internal quotation marks omitted)).

The Court should grant a stay unless it concludes that the considerable benefits of the stay will be outweighed by undue prejudice to the plaintiff.  *Braintree Labs.*, 1997 U.S. Dist. LEXIS 2372, at *25, *28-29.  In making this determination, courts ordinarily consider three factors:  (1) whether the stay will simplify or eliminate issues for trial; (2) whether the stay will unduly prejudice or confer a clear tactical disadvantage on the nonmovant; and (3) whether discovery is complete or a trial date set.  *See, e.g., Telmac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006); *Echostar Technologies Corp. v. TiVo, Inc.*, Civ. A. No. NO. 5:05-CV-81 (DF), 2006 U.S. Dist. LEXIS 48431, at *4 (E.D. Tex. July 14, 2006).[3]  Notably, this Court has considered whether to stay litigation pending the conclusion of a PTO reexamination in three reported cases; it has granted the stay, at least initially, in *each instance*.  *See ScriptPro LLC*, 2006 U.S. Dist. LEXIS 55456, at *4; *Braintree Labs.*, 1997 U.S. Dist. LEXIS 2372, at *29; *Rosenthal Manufacturing Co., Inc. v. Thermal Equipment, Inc.*, Civ. A. No. 85-2630-S, 1986 U.S. Dist. LEXIS 17993, at *1-2 (D. Kan. Nov. 6, 1986).  As demonstrated below, all the pertinent factors favor a stay of this action.

---

[3] Although Congress recently amended the old "*inter partes* reexamination" process and renamed it "*inter partes* review," all the courts to consider the issue have concluded that the same general framework controls whether a court should stay litigation pending the conclusion of the PTO proceedings.  *See, e.g.*, *Kowalski v. Anova Food, LLC*, Civ. No. 11-00795 HG-RLP, 2013 U.S. Dist. LEXIS 129445, at *5 (D. Haw. June 14, 2013); *Regents of the Univ. of Michigan v. St. Jude Med., Inc.*, No. 12-12908, 2013 U.S. Dist. LEXIS 76845, at *5 (E.D. Mich. May 31, 2013); *Universal Electronics, Inc. v. Universal Remote Control, Inc.*, No. SACV 12-00329 AG (JPRx), 2013 U.S. Dist. LEXIS 64154, at *5-6 (C.D. Cal. May 2, 2013).  As explained below, however, the pertinent factors are even more likely to favor a stay under the new *inter partes* review procedures than under the old reexamination procedures.

### B.     A Stay is Particularly Appropriate Pending *Inter Partes* Review Under the AIA.

As part of the Leahy-Smith America Invents Act (AIA), Congress amended the procedures for challenging an issued patent in the PTO, with the aim of creating a faster, more streamlined, and more cost-effective alternative to litigation.  *See* 35 U.S.C. §§ 311-319; *Universal Electronics, Inc. v. Universal Remote Control, Inc*., No. SACV 12-00329 AG (JPRx), 2013 U.S. Dist. LEXIS 64154, at *2 (C.D. Cal. May 2, 2013) (citing 37 C.F.R. §§ 42.100, *et seq*.).  The new procedure is a trial of validity before a panel of three judges on the Patent Trial and Appeal Board.  This new procedure for "*inter partes* review" became effective September 16, 2012, and replaced the old "*inter partes* reexamination" process.  *Universal Electronics*, 2013 U.S. Dist. LEXIS 64154, at *2-3.  In light of the new procedures, a stay of litigation is now more appropriate than ever.  Indeed, as one court has repeatedly observed, the promise of a more expeditious PTAB validity trial under the AIA should convince even the most skeptical judges of the propriety of staying litigation pending *inter partes* review.  *See Software Rights Archive, LLC v. Facebook, Inc*., No. C-12-3970 RMW, 2013 U.S. Dist. LEXIS 133707, at *7 (N.D. Cal. Sept. 17, 2013) (quoting *Pi-Net International, Inc. v. Focus Business Bank*, No. C-12-4958-PSG, 2013 U.S. Dist. LEXIS 118723, at *5 (N.D. Cal. Aug. 16, 2013)).

The AIA altered the PTO procedures in multiple ways that make a stay of litigation more attractive.  First, it condensed the time frame for the proceedings, which will shorten the length of the stay.  *Universal Electronics*, 2013 U.S. Dist. LEXIS 64154, at *4-5.  The PTO must decide whether to grant the Petition for review within six months of its filing, and if the PTO grants the petition, it must hold a trial on validity and issue a final determination within one year.  *Id*. § 316(a)(11).  The one-year period may be extended up to six additional months for good cause, but extensions "'are anticipated to be rare.'"  *Universal Electronics*, 2013 U.S. Dist. LEXIS

64154, at *4-5 (quoting 77 Fed. Reg. 48,695). Thus the overall duration of the proceedings will be radically reduced from the average of 37 months to complete the old reexamination proceedings (as of the second quarter of 2013). *Pi-Net*, 2013 U.S. Dist. LEXIS 118723, at *10.

Further, *inter partes* review provides for a limited adversarial, adjudicative forum. *Universal Electronics*, 2013 U.S. Dist. LEXIS 64154, at *3. Unlike the old examinational process, which was conducted before a PTO examiner, *inter partes* review is "conducted before a panel of three technically-trained Administrative Patent Judges of the newly formed Patent Trial and Appeal Board." *Id*. (citing 35 U.S.C. § 6). The parties are given the opportunity to take limited discovery and respond to each other's arguments. *Id*. at *3-4. In sum, these features of the amended procedures will invariably shorten the length of a stay and increase the likelihood that the PTO's decision will make valuable contributions to the litigation.

### C. All the Pertinent Factors Favor Granting a Stay of this Action.

#### 1. A Stay Will Simplify or Eliminate Issues for Trial.

There is no question that a stay will simplify the issues and streamline the trial of this action. The Federal Circuit has explained that "[o]ne purpose of the reexamination procedure is to eliminate trial of [an] issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when the claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983); *see also ScriptPro LLC*, 2006 U.S. Dist. LEXIS 55456, at *3 ("The PTO's reexamination of the patent will simplify the issues in this litigation and provide the court with insight and expertise on the issues before it."). Of course, the invalidation by the PTO of claims 16 and 20 of the '228 patent would eliminate the need for trial altogether. But the PTO's expert insight into this case is likely to simplify or eliminate issues in this action in several additional ways.

It is highly unlikely that the claims asserted by Plaintiff in this action will survive the *inter partes* review process in their present form.  At least one court recently observed that the PTO has rejected few petitions for *inter partes* review since the procedure's inception.  *See Pi-Net*, 2013 U.S. Dist. LEXIS 118723, at *14 ("[T]he limited statistics available to the court do show that as of the date of the motion, the PTO has initiated thirty-five IPR petitions and rejected only two.").  Given the strength of Medtronic's petitions, the PTO is especially likely to grant them and review the challenged claims of the '228 patent.  Furthermore, once the PTO grants the petitions, it is unlikely that the challenged claims will survive in their present form.  Even under the old *inter partes* reexamination regime, the process has resulted in cancellation or amendment of claims nearly 90 percent of the time in recent years.[4]  And as several courts have pointed out, "the amended standards for granting *inter partes* review probably result[] in even higher likelihood than under the prior standard that the issues in this action will be simplified by the [review]."  *Star Envirotech, Inc. v. Redline Detection, LLC*, No. SACV 12-01861 JGB (MLGx), 2013 U.S. Dist. LEXIS 58866, at *5 (C.D. Cal. Apr. 3, 2013); *see also Universal Elecs.*, 2013 U.S. Dist. LEXIS 64154, at *12 ("If the PTO cancelled at least some of the challenged claims in 89% of *inter partes* reexaminations, it seems likely that this percentage will be higher in *inter partes* reviews, because the *inter partes* review requests granted by the PTO must satisfy a more restrictive standard.").  Therefore, Plaintiff's claims currently assert infringement of a patent, the contours of which are almost certain to change as a result of the PRO action in ways that will affect the course and outcome of the case.

---

[4] Courts routinely look to such statistics in assessing the likelihood that a stay will simplify or eliminate issues for trial.  *See, e.g.*, *Software Rights Archive*, 2013 U.S. Dist. LEXIS 133707, at *14-17; *Internet Patents Corp. v. eBags, Inc.*, No. 12-2730 ADM/AJB, 2013 U.S. Dist. LEXIS 122868, at *8-9 (N.D. Cal. Aug. 28, 2013); *Hill-Rom Servs., Inc. v. Stryker Corp.*, No. 1:11-cv-1120-JMS-DKL, 2012 U.S. Dist. LEXIS 165470, at *14-15 (S.D. Ind. Nov. 20, 2012).

11

After the Court lifts the stay—and if the PTO has concluded that one or more of the asserted claims is valid—Medtronic will be precluded from asserting in this action that claims of the '228 patent are invalid "on any ground that [it] raised or reasonably could have raised during the *inter partes* review." 35 U.S.C. § 315(e)(2). Thus, the *inter partes* review "is guaranteed to finally resolve at least some issues of validity." *Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. SACV 12-21-JST (JPRx), 2012 U.S. Dist. LEXIS 186322, at *6 (C.D. Cal. Dec. 19, 2012) (brackets and internal quotation marks omitted). Likewise, Dr. Norred will be bound to the positions it takes before the PTO regarding the scope of its claims. *See CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1158 (Fed. Cir. 1997) ("[T]hrough statements made during prosecution or reexamination an applicant for a patent or a patent owner, as the case may be, may commit to a particular meaning for a patent term, which meaning is then binding in litigation."). Accordingly, a stay will simplify or eliminate many of the contested issues. This factor also favors a stay.

### 2.  A Stay Will Not Prejudice Plaintiff.

A stay of this action would not unduly prejudice Plaintiff, nor place him at any tactical disadvantage. Initially, although the stay may delay the resolution of this action, delay alone does not support a finding of undue prejudice. *See Telmac Corp.*, 450 F. Supp. 2d at 1111 ("The delay inherent to the reexamination process does not generally, by itself, constitute undue prejudice."); *accord SMT Solutions, Inc. v. Expoevent Supply LLC*, Civ. A. No. 11-6225 (ES)(CLW), 2012 U.S. Dist. LEXIS 114939, at *7 (D.N.J. Aug. 15, 2012); *Air Vent, Inc. v. Owens Corning Corp.*, No. 02: 10-cv-01699, 2012 U.S. Dist. LEXIS 64294, at *9 (W.D. Pa. May 8, 2012); *N Spine, Inc. v. Globus Med., Inc.*, Civ. No. 10-300 (RMB/AMD), 2011 U.S. Dist. LEXIS 156683, at *10 (D. Del. July 14, 2011). And if the PTO declines Medtronic's petitions, "the stay will be relatively short." *Star Envirotech*, 2013 U.S. Dist. LEXIS 58866, at *6.

Further, Plaintiff does not compete with Medtronic and is, therefore, at no risk of losing market share to Medtronic during the stay.  Although Plaintiff's complaint includes a boilerplate request for injunctive relief, the transparent purpose of this action is *not* to enjoin Medtronic's activities, but to extract form Medtronic a licensing agreement and royalties.  As Dr. Norred candidly admits in his Complaint, he has been attempting to license his aortic valve design to Medtronic or its predecessor in interest ***for a decade—never*** seeking to halt development by Medtronic of the CoreValve device until he filed this action in February 2013.  Under such circumstances, Plaintiff cannot plausibly assert undue prejudice from a stay.  *See Pi-Net International*, 2013 U.S. Dist. LEXIS 118723, at *16 (finding no prejudice where plaintiff was not in competition with defendants but focused on licensing, and had not sought preliminary injunctive relief); *Gioello Enters. Ltd. v. Mattel, Inc.*, No. 99-375-GMS, 2001 U.S. Dist. LEXIS 26158, at * (D. Del. Jan. 29, 2001) (finding no prejudice in staying litigation pending reexamination where patent owner was not making or selling goods related to patent); *see also Braintree Labs.*, 1997 U.S. Dist. LEXIS 2372, at *29 (ruling that plaintiffs' claims of prejudice and irreparable harm would be better addressed in a motion for preliminary injunctive relief, but that plaintiffs had failed to request such relief).

In the unlikely event that Plaintiff survives *inter partes* review with his claims intact *and* prevails at trial, he would be fully compensated by damages and no worse off on account of the stay.  *See Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, No.: 5:12-CV-3864-EJD, 2012 U.S. Dist. LEXIS 171416, at *10-11 (N.D. Cal. Dec. 3, 2012) ("Given that Plaintiff has not used the patents-in-suit to keep competitors out of the market, it cannot now argue that it will suffer an unfair disadvantage by Defendant's ongoing competition during any stay period.  Should infringement ultimately be found in this case, money damages will adequately compensate

13

Plaintiff for any lost licensing revenues."); *DJO, LLC v. VitalWear, Inc.*, No. 09cv2872-LAB (NLS), 2010 U.S. Dist. LEXIS 109832, at *3 (S.D. Cal. Oct. 15, 2010) ("[I]f DJO is eventually successful in its infringement suit, VitalWear will owe monetary damages that reflect DJO's losses, thus eliminating any prejudice."). Likewise, Plaintiff cannot claim pecuniary prejudice from the passage of time, because "interest will accrue in [Plaintiff's] favor if [he is] determine to be entitled to monetary relief." *ArrivalStar S.S. v. Canadian National Railway Co.*, No. 08 c 1086, 2008 U.S. Dist. LEXIS 60588, at *9 (N.D. Ill. July 25, 2008) (internal quotation marks omitted).

Finally, Plaintiff cannot show dilatory tactics by Medtronic that would justify denial of a stay. Upon the filing of this action in February 2013, Medtronic diligently conducted a prior art search and filed its petitions for *inter partes* review on October 31, 2013, well within the year provided by statute for a defendant in litigation to seek review of claims asserted against it. 35 U.S.C. § 315(b). Moreover, Medtronic seeks a stay a mere two weeks after filing its PTO petitions. The timing of these filings strongly suggests the lack of improper or dilatory motive on the part of the petitioner for *inter partes* review. *See Neste Oil Oyj v. Dynamic Fuels, LLC*, No. 12-1744-GMS, 2013 U.S. Dist. LEXIS 92416, at *6 (D. Del. July 2, 2013) (finding no dilatory motive or prejudice to nonmovant where defendants petitioned for *inter partes* review several months after receiving notice of suit and "fil[ed] their motion to stay only a few days later") *Pi-Net International*, 2013 U.S. Dist. LEXIS 118723, at *16 ("[D]efendants filed the motions to stay . . . immediately following SAP's IPR petitions, so there is no evidence of any dilatory motives or tactics on defendants' part.").

In fact, Medtronic would suffer undue prejudice in the *absence* of a stay. Specifically, Medtronic would continue to incur the expense and burden of defending itself against allegations

14

that it has infringed patent claims that may well be invalidated by the PTO.  Moreover, were Medtronic to prevail at trial, it could nevertheless be subject to further litigation if Plaintiff obtains new or amended claims in the review process.  Because Plaintiff would suffer no prejudice for a stay, but the prejudice to Medtronic from continuing to litigate this case could be severe, this factor favors a stay.

### 3. Minimal Discovery has Occurred and No Trial Date is Set.

This Court has acknowledged that denial of a stay may be warranted "if discovery has been completed or the case is otherwise in a late stage."  *Braintree Labs.*, 1997 U.S. Dist. LEXIS 2372, at *29.  The exact opposite is true here.  This case is in its infancy.  Discovery has only just begun, with only initial disclosures under Fed. R. Civ. P. 26 and some preliminary document discovery having been exchanged.  No depositions have been taken, nor expert reports exchanged.  Per the Court's Scheduling Order (issued less than three months ago on August 19, 2013), the discovery period will be open until October 1, 2014, nearly a year from now.  And the deadline to file dispositive motions is even later.  No claim construction briefing is due until March 2014.  Finally, the Court has not set a trial date.  Courts have granted a stay pending PTO proceedings at far more advanced stages of litigation.  *See, e.g.*, *e-Watch, Inc. v. Lorex Can., Inc.*, No. H-12-3314, 2013 U.S. Dist. LEXIS 138198, at *7-8 (S.D. Tex. Sept. 26, 2013) (rejecting argument that litigation was too advanced to grant stay where parties had exchanged preliminary infringement and invalidity contentions and *Markman* hearing was only two months away); *SoftView LLC v. Apple Inc.*, No. 12-989-LPS, 2013 U.S. Dist. LEXIS 125900, at *10-11 (D. Del. Sept. 4, 2013) (granting stay after completion of fact discovery and *Markman* process); *Tierravision, Inc. v. Google, Inc.*, No. 11cv2170 DMS(BGS), 2012 U.S. Dist. LEXIS 21463, at *5-6 (S.D. Cal. Feb. 21, 2012) (granting stay where *Markman* briefs were soon due and parties had exchanged proposed claim constructions and extrinsic evidence).  In sum, this is the ideal

stage to stay this action and await the benefits of the *inter partes* review, so this factor favors a stay.

## IV. CONCLUSION

For the foregoing reasons, Medtronic respectfully requests that the Court grant its motion and stay this action pending the conclusion of the *inter partes* review of the '228 patent.

November 15, 2013

**BARTIMUS FRICKLETON ROBERTSON & GORNY**

*/s/ James P. Frickleton*
James P. Frickleton
Kansas Bar No. 20602
11150 Overbrook Road, Suite 200
Leawood, Kansas 66211
(913) 266-2300 Tel
(913) 266-2366 Fax

**MCKOOL SMITH P.C.**
Theodore Stevenson III (admitted pro hac vice)
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
Nicholas M. Mathews (admitted pro hac vice)
Texas State Bar No. 24085457
nmathews@mckoolsmith.com
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Sam Baxter (admitted pro hac vice)
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
104 E. Houston Street, Suite 300
P.O. Box 0
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

## CERTIFICATE OF CONFERENCE

Medtronic's counsel conferred with counsel for Dr. Norred telephonically on November 15, 2013, and Dr. Norred is opposed to the relief requested herein.

                                                                   __*/s/ James P. Frickleton*_____
                                                                   James P. Frickleton

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on November 15, 2013.

                                                                   __*/s/ James P. Frickleton*_____
                                                                   James P. Frickleton