## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| **TROY R. NORRED, M.D.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 13-CV-2061 EFM/DJW** |
| | ) | |
| **MEDTRONIC, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM IN OPPOSITION TO MOTION TO STAY PROCEEDINGS

Pursuant to Local Rule 7.1, Plaintiff Troy R. Norred, M.D., submits this memorandum in opposition to the motion to stay proceedings filed by Defendants Medtronic, Inc., Medtronic Vascular, Inc., and Medtronic CoreValve, LLC in the captioned cause.

### STATEMENT OF THE MATTER BEFORE THE COURT

Defendants have moved this Court to set aside its August 19, 2013 Scheduling Order ("August 19th Order") and stay proceedings pending a decision by the Patent Trial and Appeal Board ("PTAB") as to whether to institute an *inter partes* review of the '228 Patent. By statute, the PTAB must decide whether to institute an *inter partes* review within six months after the petition for *inter partes* review is filed. 35 U.S.C. § 314(b). Defendants filed their petition on October 31, 2013. Accordingly, a decision is expected no later than April 31, 2014. The issue is whether litigation should grind to halt in the interim, or whether the deadlines set forth in the August 19th Order should remain in force.

For the reasons set forth below, Dr. Norred respectfully submits that the deadlines set forth in the August 19th Order should remain in force until such time as the PTAB decides whether to institute an *inter partes* review. Unless and until the PTAB decides weigh in, the

purported benefits of a stay are wholly speculative, and are outweighed by the prejudice Dr. Norred will suffer from being hamstrung in his ability to seek recompense for Defendants' acts of infringement.

## STATEMENT OF THE FACTS

This is a lawsuit for patent infringement brought by Dr. Troy R. Norred.  *Complaint*, ¶¶ 1 & 2.  Dr. Norred is a cardiologist residing in Ada, Oklahoma.  *Complaint*, ¶ 10. In the late 1990s, Dr. Norred invented a replacement aortic valve designed to be placed percutaneously via a catheter and stent system in cardiac patients suffering from aortic stenosis or aortic regurgitation to help regulate blood flow in the heart.  *Complaint*, ¶ 24.  Dr. Norred filed for a patent on this invention on November 14, 2000.  *Complaint*, ¶ 27.  Approximately two years later, on November 19, 2002, United States Patent No. 6,482,228 ("the '228 patent") entitled, "Percutaneous Aortic Valve Replacement" was issued.  *Complaint*, ¶ 28.

In September 2003, Dr. Norred attended the Transcatheter Cardiovascular Therapeutics Symposium in Washington D.C.   *Complaint*, ¶ 31.  Representatives from a company known as CoreValve, Inc. were present at this symposium.  *Complaint*, ¶ 32.  They presented a surgical device named the Percutaneous ReValving System (the "PRV System").  *Complaint*, ¶ 32.   The PRV System was strikingly similar to the invention claimed in the '228 Patent, and indeed, appeared to be rough copy.  *Complaint*, ¶ 33.

After the conference, Dr. Norred called Robert Michaels, the then-President of CoreValve, and told him that CoreValve needed a license for its PRV System.  *Complaint*, ¶ 35. Mr. Michaels did not deny a license was necessary.  *Complaint*, ¶ 36.  Instead, Mr. Michaels explained that CoreValve was a small company, and that Dr. Norred should wait to discuss

licensing until CoreValve grew to the point that it could support the licensing fees associated with the '228 Patent. *Complaint*, ¶ 36.

Dr. Norred was not persuaded. *Complaint*, ¶ 37. He sent a follow-up letter to Mr. Michaels enclosing a copy of the '228 Patent and urging CoreValve to enter into licensing discussions immediately. *Complaint*, ¶ 37. CoreValve did not respond to this letter. *Complaint*, ¶ 37. Dr. Norred waited several months then sent another letter to CoreValve. Again, CoreValve did not respond. *Complaint*, ¶ 38.

Medtronic, Inc. ("Medtronic") purchased CoreValve in 2009. *Complaint*, ¶ 39. Dr. Norred contacted Medtronic to introduce himself and explain the issue that had arisen regarding the PRV System and the '228 Patent. *Complaint*, ¶ 42. Medtronic initially was receptive to this inquiry. *Complaint*, ¶ 43. From November 2009 through December 2010, Dr. Norred and Medtronic engaged in extensive discussions regarding licensing of the '228 Patent. *Complaint*, ¶ 44. Medtronic ended these discussions without explanation in December 2010, refusing further communication. *Complaint*, ¶ 45.

Left without other options for resolving this dispute, on or about February 6, 2013, Dr. Norred decided to file the present action for patent infringement against Medtronic and certain affiliated entities. Defendants responded by filing counterclaims seeking a declaration that the PRV System does not infringe on the '228 Patent (Count I), and seeking a declaration that the '228 Patent is invalid (Count II). More recently, on or about October 31, 2013, Defendants filed a petition for *inter partes* review with the United States Patent and Trademark Office ("PTO") seeking to invalidate the '228 Patent on the basis of purported prior art. The Patent Trial and Appeals Board has not yet decided whether a review should be instituted.

## QUESTION PRESENTED

Whether the Court should set aside its August 19, 2013 Scheduling Order and stay this litigation pending a decision by the Patent Trial and Appeals Board as to whether to institute an *inter partes* review of the '228 Patent.

## ARGUMENT

Pursuant to the Leahy–Smith America Invents Act ("AIA"), Pub.L. 112–29, Sept. 16, 2011, 125 Stat 284, any "person who is not the owner of a patent may file with the [PTO] a petition to institute an *inter partes* review of the patent." 35 U.S.C. § 311(a). Petitioners "may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under [35 U.S.C.] section 102 or 103 and only on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b).  The petition for *inter partes* review must be filed within one year after the petitioner is served with a complaint alleging infringement of a patent.  35 U.S.C. § 315(b).  After the petition for *inter partes* review is filed, the patent owner has three months to file a preliminary response setting forth the reasons why *inter parties* review should not be instituted; alternatively, the patent owner may expedite the proceeding by waiving the preliminary response. 37 C.F.R. § 42.107(a)–(b).  The Patent Trial and Appeals Board then has three months to decide whether to institute an *inter partes* review.  35 U.S.C. § 314(b).  *Inter partes* review will be instituted only if the petition presents "a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a).

If the PTAB decides to institute an *inter partes* review, the review must be completed within one year unless good cause exists for extending this deadline.  37 C.F.R. § 42.100.  The petitioner has the burden of establishing lack of patentability by a preponderance of the evidence.

35 U.S.C. § 316(e). The patent owner has an opportunity to add or amend claims to address the petitioner's patentability challenge. 35 U.S.C. § 318(b). After a review concludes, the petitioner is estopped from asserting that a claim is invalid "on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review." 35 U.S.C. § 315(e)(2).

In enacting the AIA, Congress provided for an automatic stay of civil proceedings in cases where civil proceedings were instituted by the party petitioning for an *inter partes* review. 35 U.S.C. § 315.  In contrast, Congress chose *not* to provide for an automatic stay in cases such as this one, where civil proceedings were instituted by the patent owner rather than the *inter partes* petitioner.  *See id.*  In these cases, the decision whether to stay proceedings is left to the sound discretion of the district court.

When evaluating a request to stay litigation pending an *inter partes* review, district courts generally consider three factors: (1) the stage and history of the litigation; (2) whether a stay would simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party.  *In re Cygus Telecomms. Tech., LLC Patent Litig.,* 385 F. Supp.2d 1022, 1023 (N.D.Cal. 2005); *see also Honeywell Int'l, Inc. v. Furuno Elec. Co. Ltd.,* No. 09–3601, 2010 WL 3023529, at *2 (D.Minn. July 30, 2010) (citing *3M Innovative Props. Co. v. Dupont Dow Elastomers LLC,* No. 03–3364, 2005 WL 2216317, at *1 (D.Minn. Sept. 8, 2005)).  The inquiry is not limited to these three factors, however.  Instead, "the totality of the circumstances governs." *Allergan Inc. v. Cayman Chem. Co.,* No. SACV 07–01316 JVS (RNBx), 2009 WL 8591844, at *2 (C.D.Cal. Apr. 9, 2009) (citation omitted).   The district court must decide stay requests on a case-by-case basis. *Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.,* No. 06–cv–04206–WHA, 2007 WL 1052883, at * 1 (N.D.Cal. Apr. 5, 2007) ("From a case management perspective, the possible

benefits must be weighed in each instance against the possible drawbacks."). "Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a[n *inter partes* review]." *See Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426–27 (Fed.Cir. 1988) (citations omitted).

In the case at bar, consideration of the relevant factors and the totality of circumstances counsels against imposing a stay. The Court should not upend the comprehensive schedule that was crafted for this case based on the mere possibility that an *inter partes* review might commence and might make certain case deadlines unworkable.

### Stage and History of the Litigation

While this lawsuit was filed in February of this year, this litigation traces its origin back to 2009. There were extensive back and forth discussions between Dr. Norred and Medtronic about Dr. Norred's infringement allegations and the '228 Patent. *See Complaint,* ¶ 44. Defendants could have challenged the validity of the '228 Patent then, without waiting for Dr. Norred to seek recourse in federal court.

Alternatively, Defendants could have acted promptly upon learning of this lawsuit. By the end of February, each Defendant had received a copy of the complaint. *See* ECF Nos. 4, 5, 7. Yet, months passed without Defendants petitioning or indicating that they would petition for *inter partes* review. Instead, they actively litigated this matter, participating in the Rule 26(f) planning conference and the preparation of the required report (they advocated for the deadlines they are now seeking to set aside), exchanging initial disclosures, serving and responding to written discovery, and participating in mediation.

Defendants did not raise the possibility of *inter partes* review until mid-October, and did not move for a stay until nearly a month after that, after Dr. Norred served Defendants with his

initial infringement contentions.  The timing of the motion to stay suggests that Defendants desire to avoid providing Dr. Norred with their initial invalidity contentions (due December 20th under the August 19th Order).  Defendants also may desire to avoid producing a corporate representative to testify in response to a recently served Rule 30(b)(6) deposition notice (ECF No. 45).

At this point, given the stage and history of these proceedings, the benefit of a stay is speculative at best.  Much work already has been done.  The work to be completed over the next six months primarily consists of depositions and legal briefing.  If the PTAB does not institute an *inter partes* review, delaying this work merely delays the inevitable; this work will need to be completed at some point to bring this matter to a conclusion.  If the PTAB does institute an *inter partes* review, this work still will need to be completed unless the '228 Patent is invalidated.  Absent a presumption that Defendants will "win" their patent challenge, there is no reason— much less, good cause—to upend the comprehensive schedule entered by this Court.  *See Dane Technologies, Inc. v. Gatekeeper Systems, Inc.*, Civil No. 12-2730 ADM/AJB, 2013 WL 4483355, at *3 (D. Minn. Aug. 20, 2013) ("Courts hesitate to stay litigation where the case has proceeded through discovery or even reached the "trial ready" phase").  Defendants' motion to stay proceedings should be denied.

## Simplification of Issues

There is no question that a stay would simplify issues *if* the PTAB were to institute an *inter partes* review.  In that instance, the PTAB would be in a position to conclusively decide the patentability of Dr. Norred's invention over purported prior art, thus removing one of Medtronic's primary defenses.  35 U.S.C. § 315(e).  If the PTAB *does not* institute an *inter partes* review, however, a stay would simplify nothing.  Instead, it would complicate matters by

interrupting this litigation mid-stream and upending the comprehensive schedule entered by this Court to ensure the prompt and efficient resolution of this dispute. Deadlines that were supposed to occur in the next six months will be postponed until late 2014. This matter may not be fully resolved until a year or more after that.

The United States District Court for the Northern District of California considered these issues in *TKP Touch Solutions, Inc. v. Tintek Electro-Optics Corporation*, Case No. 13-cv-02218-JST, 2013 WL 6021324 (N.D. Cal. Nov. 13, 2013). In denying a motion for stay, it reasoned:

> [I]n most cases, the filing of an IPR request by itself does not simplify the issues in question and trial of the case. Ultimately, the PTO may not institute IPR proceedings. Even if it does, the Court and the parties cannot know now whether the claims subject to IPR will be the same claims that Plaintiff asserts here. While an IPR proceeding might simplify a case once IPR has been granted, at this point it is too early to draw that conclusion.

*Id.* at *4 (citations omitted).

Because neither the parties nor the Court can know whether the PTAB will institute an *inter parties* review, it is impossible to conclude that a stay will simplify issues. *See Dane*, 2013 WL 4483355, at *2 (noting that whether the PTO will initiate *inter partes* review is speculative). Accordingly, consideration of this factor counsels in favor of maintaining the status quo and against imposing a stay. The Court can revisit this issue if and when an *inter partes* review commences, making the need for and benefit of a stay more clear.

### Prejudice to the Non-Moving Party

In evaluating this factor, "courts have taken a practical approach to determining whether the non-movant will suffer undue prejudice from a stay. A court may deny a request for a stay where the movant has unjustifiably delayed seeking reexamination, or where the stay will do nothing but delay the proceedings." *Dane*, 2013 WL 4483355, at *2 (citations omitted).

In the case at bar, imposing a stay is likely to accomplish nothing but delay.   While Defendants cite statistics for the proposition that their petition for *inter partes* review will be granted and will result in the invalidation or amendment of the claims in the '228 Patent, these statistics are skewed by low sample size (fewer than 400 petitions since the AIA became effective).   There also is no indication how many petitions were opposed at the preliminary stage; by statute, filing a preliminary response is optional.  35 U.S.C. § 313.  Additionally, these statistics say nothing at all about the types of patents being challenged in the PTO, or the quality of quantity of prior art submit by the challenger.   At this stage of the proceedings, it is pure speculation to conclude the PTAB will institute an *inter partes* review of the '228 Patent or that such review will terminate in Defendants' favor.

The United States District Court for the District of Minnesota considered similar issues in *Dane, supra.*  In denying a motion for stay, the *Dane* court reasoned:

> Gatekeeper asks the Court to stay this litigation based only upon its decision to petition the PTO to initiate an inter partes review. Gatekeeper argues that the PTO has granted inter partes review petitions in approximately 89% of cases since the AIA became effective in 2011. Thus, Gatekeeper argues, their motion to stay should be granted on the assumption that the PTO will review the case. This argument is too speculative. After a petition requesting inter partes review is filed, the PTO has six months to decide whether to review a disputed patent. *See* 35 U.S.C. § 314(b). Before the PTO makes this decision the Court can only speculate as to whether the PTO will review a patent and to what extent. Considering the administrative framework, the Court would be waiting six months, ending in approximately December 2013, for the PTO to decide if it will initiate an inter partes review. At that point, if the PTO declines to hear the case, Dane's litigation will have been delayed for no perceivable benefit. Furthermore, Gatekeeper waited approximately seven months into the litigation, until May and June of 2013, before seeking inter partes review of two out of three of the disputed patents.  [B]ecause the PTO's review of Gatekeeper's petitions is speculative, and because the scope of the PTO's possible review is also speculative, … [this] factor weighs in favor of Dane.

*Dane,* 2013 WL 4483355, at *2 (citations omitted).

This reasoning is equally applicable to the case at bar. This litigation should not grind to

a halt merely because Defendants decided (belatedly) to pursue relief with the PTO.  On the contrary, Dr. Norred should be able "to prosecute its claims, to take discovery, and to set its litigation positions, at least until such a time as the PTO takes an interest in reviewing the challenged claims."  *Dane*, 2013 WL 4483355, at *3 (citations omitted).  To hold otherwise would reward Defendants merely for preparing the paperwork attendant to an *inter partes* challenge.  The August 19th Order would become a mere nullity.

## CONCLUSION

For the foregoing reasons, Defendants' motion to stay proceedings should be denied.  In the event the PTAB institutes an *inter partes* review, the Court can revisit this issue and modify the August 19th Order to accommodate the 12- to 18-month period when the review will take place.  Indeed, if the PTAB institutes a review, it is anticipated the parties will jointly request this relief.    Otherwise, until and unless the PTAB decides to weigh in, there is no reason to disrupt the status quo by setting aside the August 19th Order.

Respectfully submitted,

**BARTLE & MARCUS LLC**

*/s/ David L. Marcus*
David L. Marcus,  KS Bar No. 18034
1100 Main Street, Suite 2730
Kansas City, Missouri  64105
Telephone:  816- 256-4699
Facsimile:  816- 222-0534
dmarcus@bmlawkc.com

-and-

**ERICKSON, KERNELL, DERUSSEAU
& KLEYPAS, LLC**

*/s/ James J. Kernell*
James J. Kernell, KS Bar No. 19559
ERICKSON, KERNELL, DERUSSEAU
& KLEYPAS, LLC
8900 State Line Road, Suite 500
Leawood, Kansas  66206
Telephone:  913-549-4700
Facsimile:  913-549-4646
jjk@kcpatentlaw.com

Attorneys for Plaintiff Troy R. Norred

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was filed electronically with the Clerk of the Court this 20th day of November, 2013, to be served by operation of the Court's electronic filing system upon the following:

Samuel F. Baxter
MCKOOL SMITH, PC
104 E. Houston Street, Suite 300
Marshall, TX 75670
sbaxter@mckoolsmith.com

James P. Frickleton
BARTIMUS, FRICKLETON, ROBERTSON & GORNY
11150 Overbrook Road, Suite 200
Leawood, KS 66211
jimf@bflawfirm.com

Theodore Stevenson, III
MCKOOL SMITH, PC
300 Crescent Court, Suite 1500
Dallas, TX 75201
tstevenson@mckoolsmith.com

Attorneys for Defendants


     /s/ David L. Marcus_____
     Attorney for Plaintiff